May it please the Court, PRC owned a proprietary interest in the rig and therefore had standing to sue for its proportionate share of damages caused by the elision on August 4th of 1912. Your Honor, the District Court has had a, we've had a lot of judges and primarily most of the rulings and most of the analysis was done by the Magistrate Judge Freshner down below and in the interim we had at the trial level Judge Costa and now Judge Hanks and because of the procedural history of this I felt it important that we pursue this issue. First of all, if you look at the ruling that came from the District Court which adopted the magistrate report and recommendation, it turns on whether there was ownership of the rig and indeed whether even a joint venture existed. The plain language of the joint venture which is in the record makes it very clear. It's a six page document with a one page amendment ten days later. And within those six pages, even though it's titled the Viking Prospector Joint Venture Dismantling Agreement, it mentions that they are joint ventures. They mention the term joint venture over 11 times in the first six pages. The magistrate judge summarily dismissed it. It's important, especially when you consider we're coming from a Rule 56 summary judgment posture in which we are to have every inference with respect to that ownership flow our way. It was uncontroverted with respect to what this document meant. More important within this document are some of the terms itself. So the joint venture was between an individual by the name of Francisco Moreno. And why is he not in this case? Mr. Moreno is adverse to publicity and Mr. Moreno didn't want anything to do with it. He had a long storied history with this rig. This was not the first time he had owned the rig or loaned money to the rig. In fact, he bought it out of a Marshall sale because of a loan that he had given to an entity called KT. And it was born out of that transaction and purchased from that that he then contributed, as we see in section 2.01 of this joint venture agreement, to this joint venture. And this joint venture was very simple. The joint venture was simply that, initially, that he was going to contribute and did contribute by the specific languages in 2.01 to this joint venture. And my client was going to. But isn't he a necessary party? Because if the court had ruled there was a joint venture, he's not bound by that because he's not in the case. And he could come in later and go, no, I'm the owner of a rig. Now I want to sue. And if there isn't a joint venture, he's also not bound by that. And he could say, there is a joint venture, and I'm not the owner, and I don't have any liability as an owner. So how could this proceed? I don't even understand how we got here. I mean, this is the problem that I've had. I understand the basic argument about standing and what you all briefed. But I'm just having trouble understanding kind of how we got to a place where PRC is the one sued for unseaworthiness and all of that, but they're not the owner, and we don't have the owner, and the owner's disappeared, or he doesn't like publicity or whatever his problem is. And so we're just left with this. We're missing people. And then we're also missing PRM or whoever on appeal. So we're just missing a lot of people here, and I don't understand that. Well, Your Honor, I would first say they're not necessary parties. Mr. Moreno is not, and nor is his subsequent entity, PRM, a necessary party. And even if any dispute to satisfy the court that could happen down the road with respect to that, should there be a judgment, would be a contractual dispute, because the joint venture agreement deals with that. And so any recovery that PRC would make on behalf of the joint venture or on behalf of itself would still be covered by the terms of the joint venture and the joint venture agreement, and that's where we get into this procedural morass that happened down below with respect to the motion to amend and a subsequent assignment of all the interests by PRM and Ms. Moreno to PRC to pursue this lawsuit. Now, setting aside the whole issue on whether the motion to amend should have been granted or not, it's a clear indication of what Mr. Moreno's intent was, in that he looked at this as a joint venture in a vehicle in order to recover his investment, not from this joint venture, but lost monies that he had made to prior owners of this rig that he was merely trying to recoup and recover. What happened is the basis for what, for the genesis of this lawsuit, in that when you looked, when PRC went and looked at the rig at Gulf Copper, it had been buried in mud for 10 to 15 years in a wet mud. It was in remarkable condition. It wasn't damaged, and so that's why 11 days later, both Mr. Moreno and PRC amended the joint venture where the rig could be sold as is or substantially as is, and here was the plan, and this is why, on an independent level, that PRC would have standing in this case, because what happened was they said, okay, we can turn this into a flotilla or housing offshore, and so PRC was then engaged and had complete control and domain over the vessel. They insured it. They moved it with approval and docked it at Malin. They were subject to the lawsuit with respect to Malin down below. With respect to this, they provided all the equipment. They provided all the money. They provided the insurance. They provided their survey, and they provided the engineering necessary. They were also responsible for the marketing with respect to it and had engaged in a preliminary agreement with McDermott Engineering, which is no small feat, and had met with the government of Mexico with respect to its offshore needs and prospects with respect to that, and understand. In the joint venture, in any document, is there the actual transfer by Moreno of the oil rig to the joint venture? I guess my concern is, where is there evidence that he actually did convey ownership to the joint venture? Justice Prado, you're exactly right, and record title did not transfer, but if you look at section 2.01 of the joint venture agreement, it clearly indicates, and I will quote that Francisco Moreno would contribute the following, and the first item is the oil rig Viking Prospector. In the case of Faust v. Old American County Mutual Fire Insurance, we learned that ownership of the property with respect to this analysis is not determined by legal title, per se, but rather by the intention of what the parties had supported by the evidence. And clearly when you have a joint venture agreement that clearly indicates that the rig in and of itself is going to be contributed to the operating joint venture agreement, then you have an intention of that rig to be contributed to the joint venture. That makes sense. But don't we have a week later Moreno intending to transfer it to someone else? No, Your Honor. Doesn't that contradict giving it to the joint venture when he says he's going to give it to PRM? That's an assignment to in and of itself, basically. He created a single purpose entity is all he did. Doesn't that conflict with what the joint venture intent to give it to the joint venture contradict those two intents? I don't believe it does because the real owner and interest never changes with respect to that. And I would note that no one has disputed whether this was a valid joint venture agreement. The appellees in this case don't have standing to challenge the validity of whether this was an appropriate joint venture or whether the amendment was a joint venture. I thought somebody said it was a sham. The magistrate said that the now it was upon motion to amend there was a what was called the, and I'll find it, Your Honor, but an affidavit or an assignment of the interest that was backdated back to when was called a sham by the magistrate judge. But not the original JV, alleged JV? No, Your Honor, nor the amendment. It's not really about this issue of the appellees standing to challenge the joint venture itself. Why can't they argue there's no joint venture in a case where the question of your ability to sue is directly at issue? I know they couldn't just walk up one day and say you don't have a joint venture when they have no interest in that, but here they're being sued under the counterclaim, so why can't they say, well, sorry, you don't have any interest in this thing you're claiming. You aren't the guy who owned the car that was in the car wreck. You aren't the guy, I mean, why can't they say that? They can, Your Honor, but they have to, under a Rule 56 posture, they have the burden of conclusively proving that there is no joint venture. Okay, but then that's different from lacking standing. You said they lacked standing, and now you're saying they didn't prove it under Rule 56. Those are two different issues. Yeah, yeah, yeah. So if I said they lacked standing, I'm incorrect with respect to that. What I'm merely trying to point out is no one has challenged the validity, per se, of whether this joint venture is actually in existence. Now, whether the joint venture... That's exactly what they did. They exactly challenged both things. Was there ever a joint venture, an agreement to share profits and losses and joint control and all the things that Texas requires, and assuming argumentative there is a JV, was this rig ever actually transferred to the JV? Those are two different issues, and they challenged both, as I understand it. Maybe I'm missing something. This is quite a morass to get through, but I thought I got that at least. That's exactly what they did, Your Honor. Again, the point of the matter is it's in a Rule 56 procedure, and I think what the magistrate did was flip the burden with respect to that absent it by not giving us every influence. But to address specifically what you were asking... No, no, Rule 56. I'm sorry, because that raises a point that nobody raised, which I think is actually kind of important. Standing is a question of subject matter jurisdiction, which is a 12B1, which is a different standard for fact-finding and for review. Anybody think about that? Because the Court's final judgment actually reflects the 12B1 language, but up until then, everybody's talking summary judgment and 12B6 kind of stuff. Did anybody talk about the fact that standing is a question of subject matter jurisdiction and that's the right... 12B1 is the right standard? Only in the context, Your Honor, that subject matter jurisdiction could never be waived. But how it dovetails with respect to that is while giving clear deference to the trial court to manage their schedule and everything, in this case, with respect to the motion to amend, there's a clear issue. And I don't think we need a motion to amend because I think clearly on the face of the is if we were in a joint venture together, you provide a rent house. We're doing rent houses and flipping them. You provide the house, I provide the labor. Something happens to the house. Well, clearly, I still have a proprietary interest with respect to that house, even if you were to hold record title and that's what the Faust v. Old American County case told us. But with respect... Because again, the issue turns on what was the intent of the joint ventures in this and here you have neither joint venture disavowing this joint venture and the purposes of this agreement. But to address your question and the concerns you had about whether this met all the standards and everything, not only do you have a clear language in Section 2 that the property was to be given to the joint venture, but you also have the profits and how they were supposed to be handled in Section 4, 4A, and that there was a recoupment of the expenses first and then the profits were to be split 50 percent, 50 percent. Article 5 dealt with how the expenses were going to be held with respect to that. Now, the athletes want to argue that the non-compete language in Section 7.01 sub 2 indicates that there wasn't all these things were not met. But all it talks about in the non-competition agreement was that Mr. Moreno and his representatives and assigns and executors and so forth would not engage and would not compete in the sale or the disposition of the rig so long as, and this is important, that PRC promptly undertakes its obligations under this agreement. What is important is on the exact same day that Mr. Moreno purchased this rig out of the Marshall sale, on that same day PRC and Mr. Moreno formed this joint venture for the purposes of disposition of this. And so I think, number one, there is clearly a JV, at least in the summary and judgment posture. Number two, clearly PRC would have a proprietary interest and therefore have standing. In the alternative, I would argue, absent this case was fully discovered, ready for trial. Not a complaint was made either at a 12B level or a Rule 17 level with respect to the standing. And when we sought to amend at that time, there was, in the dates, the procedural history is there was a 12-month delay. We had already presented our objections to the district court level on the report and recommendation and 11 months later, then the magistrate overrules the motion for amendment. So that's the procedural history of it. But absent a Rule 17-1A, which says that a court may not dismiss the case, absent giving a plaintiff a chance to insert the real party and interest, then if you look at this case, all you had to do was make clear in paragraph 4.3 to 4.5 of the verified complaint made it clear that we were operating and that our interest derived from our ownership in the joint venture. And if that's the case . . . That's why it wasn't allowed. Right? Your amended attempt, attempted amendment? Well, so I interpreted that, and Justice Clement, to be honest, I wasn't there. So I was on the plea. But you got a time anyway. You can think about it. Yeah. All right. Ms. Ramsey. May it please the Court, Dana Ramsey from Malin International Ship Repair. We are missing Mr. Marino, and that him not being in this lawsuit is very significant because it's clear by his absence that PRC Environmental was suing in this case on its own behalf, not on behalf of anybody else. And it's clear in its own pleadings that it filed suit on its own behalf. But you all sued PRC. There were the three lawsuits, multiple lawsuits pending. There were parties suing everybody, counterclaims, there's cross-claims. We're all suing back and forth. What triggered the particular action that brings us to this Court today is when the owners of the barge filed suit over the damage to the barge from the rig that Plant Recovery Company, a completely separate legal entity, appeared and claimed a verified ownership of the rig. PRM appeared and filed documents under verification verifying their ownership of the rig. PRC Environmental did not respond to the lawsuit that the barge owners filed claiming damage to their barge. They're not even part of that lawsuit. We're here on their claim that they brought into all of the litigation that was going on that it, PRC Environmental, had a lost economic interest because the, allegedly, the rig was damaged. Did you disavow the joint venture? Yes, we did. Well, in the motion for some... Well, yes, the argument is that PRCE is attempting now to claim, oh, well, I was actually appearing as a partner of the JV or as appearing on behalf of the JV. And our response is, well, the JV doesn't exist. The joint venture agreement itself has a clause entitled conditions precedent. It said this joint venture will not exist if these conditions do not occur. And there was two conditions that did not occur. Number one, PRCE did not scrap the rig. That was a condition precedent. The other condition precedent by amendment was that PRCE would sell the rig. That never occurred. I thought they were supposed to contribute the rig to the joint venture. Mr. Moreno, under the joint venture, Mr. Moreno was required to purchase the rig, which he did. And that kind of dovetails into the other argument of they're trying to argue proprietary interest, which, of course, requires ownership. And they rely very heavily on intent. And under the Texas Business Organization Code 152.102, intent is irrelevant. The business organization code tells us how partnership property is owned. Partnership property bought by a partner is presumed to be that partner's property, regardless of whether the property is used for partnership purposes. That is, regardless of whether that joint venturer who purchased the property contributes it to the rig. Using the joint venture talks about contribution, well, the business organization code tells you if the partner buys it in his own name, and even if he contributes that property to the joint venture. It's a little weird to me to have you as an outsider to this deal coming in, kind of like telling me how my marriage is supposed to work, how's my joint venture supposed to work, if the joint ventures are getting along and saying this is our deal, how can you come in and challenge that? Because when PRC Environmental is claiming under the joint venture, they're trying to dovetail a proprietary interest through the joint venture, because they're using the joint venture agreement to try and give them some type of proprietary interest. Our response is, well, your joint venture doesn't exist. And if you, even putting that aside, that the joint venture doesn't exist, the partnership, that property never became owned by the joint venture. Never left title from Mr. Moreno. So is it your position that Mr. Moreno is the owner of the rig today? Yes. Well, no, I'm sorry. He was the owner of the rig until my client arrested the rig. Oh, okay. So it's in a million pieces scattered all over the world. But at the time that the lawsuit or the counterclaim was filed, you say that Mr. Moreno owned it, not the joint venture. Yes. He held legal title to the rig. Why did no one sue him? Let her finish her sentence. Okay. I'm sorry. It's okay. I think I did. Yeah. If you didn't go. He held legal title. All right. Question on why did no one sue Moreno if he's the owner, if he holds legal title when seaworthiness of the vessel was in question or the rig? My client was brought into this lawsuit actually by the barge owners for the sole purpose of responding to PRC Environmental's claims that they had a lost economic expectancy from the rig being damaged. That is the only lawsuit I was brought in on, Malin was brought in on, was responding to their individual claim that because this rig was damaged or allegedly damaged, that was ever actually, physical damage was never presented in response to summary judgment motion. But that is the only lawsuit we were brought in on. All this multiplicity of litigation and claims going on, that's what we were fighting. I didn't have the owner of the rig suing me, suing my client for anything. PRC was suing as a member of the joint venture saying, I personally, me PRCE, lost an economic expectancy. So how do you have a stake in this fight right now? Because when the barge owner was sued by PRC Environmental, the barge owner brought in as a third party petition, Malin. And as the court, the district court and the magistrate below the district court put in the final order is that I have standing because I am being sued directly through. Indirectly. Indirectly, yes. All right. I got dragged in. I find this very. It was, you have to do a chart and this rig and the judge freshener, the magistrate below will tell you he's known this rig has been in and out of the district court for 20 years probably. So he was very happy when we. But it's gone now, you said. It's gone. It's been scrapped. It will never darken your doors again. And the final point too, there is an issue separate from the capacity and standing relating to who owns this rig and who has the legal authority to prosecute, PRC Environmental seeks only one type of damage, the loss of economic expectancy. Well, that is under test bank and Robbins dry dock is not a relief the court can grant it. It's just I thought I could make a lot of money off this rig if 500 things had happened before that. And no court, this court has consistently without fail said the loss of an economic expectancy of a JV partner is not a redressable injury and standing requires a redressable injury, which is one reason why we waited to the MSJ stage is because they get through discovery and opportunity to come up with a redressable injury. And by the time discovery was done, there was none because they still only had a loss of an economic expectancy. The amendment as well, I think that you're saying that if they lack standing as owner of the rig, then only that, because if they own the rig, then whatever damage the rig, you're saying, although you're saying they didn't, even if they own the rig, you can't sue because they only claim ownership of the rig as a member of the joint venture. And as a member of the joint venture, even if they can get past that hurdle, they still only have a loss of an economic expectancy. And not the physical damage to the rig. And no physical damage. If any. Yes. And they did not respond in response to the motion for summary judgment with any evidence of physical damage to the rig. This is what I thought we could do if all these other things had not happened. Was that an Article III redressability argument that would be equal to standing, that would be an alternate basis to hold that? Yes, ma'am. Okay. It is. It is. And again, just briefly on the amendment, it was too late. It was after the summary judgment briefing was done, and the rules are very clear. And alternatively, they did not appeal that ruling. They didn't object to the magistrate's holding that the amendment was too late. And the sham language came from the barge owners in Malin that the assignment, attempting to assign prosecution of the case jointly to PRCE and PRM, who is not part of this appeal, we called the assignment a sham because it was created two years into the lawsuit and after summary judgment briefing. But that still doesn't even help them because that addresses possibly capacity for prosecuting claims on behalf of the joint venture, but we still haven't gotten to evidence that the joint venture ever owned the rig. Because title, again, always stayed in Mr. Marino's name until the rig was arrested. All right. Thank you, ma'am. May it please the Court? My name is Jim Brown, and I represent the co-appellee, the intrepid, the Crowley, along with my partner, Mike Gray. I'd like— Are you okay? Because I know—were you the person that needed the continuance? Well, I wanted to thank the Court.      I had an open-heart surgery on March 30th. I had an open-heart surgery on March 30th. The Court indulged me with the continuance as did counsel. It was very helpful, and I'm happy to report I'm back. I've been here 25 years before this Court. I'm back with excellent lawyers, and I appreciate the Court's indulgence. Turning to the cases, there's four things. First, in my mind, the district court reviewed a clear and unambiguous contract, as counsel himself said, and found ownership in the rig never vested in the joint venture. We believe, secondly, that the joint venture never formed in the first place because, as Ms. Ramsey said, there was two conditions present. One, though, was Mr. Moreno gained title to it, which he certainly did. And two was that PRC entered into an agreement with Gulf Copper to scrap it and place it at Gulf Copper or sell it as is. So is the magistrate incorrect? I mean, the conclusion is in your favor, but he implied or assumed that there was a joint venture. And just said there was no transfer of the rig. So do we affirm or reverse? Or if we accept your argument, I mean, what do we do with the magistrate's? With the magistrate's order, I would accept it if I was the Court. It's clear. It's unambiguous. No one's pled ambiguity. And I believe if you assume that the joint venture was indeed formed, title never transferred from Mr. Moreno to the joint venture for several reasons. We know that in the Malin litigation where Malin sued PRC, they were brought in. PRM was brought in. They claimed that they were owners. And PRM and Mr. Moreno, that's on our brief at page 50, in the Malin versus PRC suit, they sued PRC. And they sued PRC claiming you had no right to move the rig over to Malin. And if you entered into an agreement with Malin, that's for your account because the agreement was to keep it at Gulf Copper and scrap it. And we have at the record 1350 a letter from Mr. Moreno's attorney in November 2012 to PRC saying you either pay Malin or you buy the rig from me. Clearly showing that Mr. Moreno knew that he still had title. A month later, on the record at 1703, Mr. Moreno's attorney wrote PRC informing them they were acting outside the scope of the joint venture by moving it to Malin and informing them that Mr. Moreno was going to sell it to a third party. Again, Mr. Moreno claiming that he owned title to it. On the record at 216, we have the district court order confirming Mr. Moreno was the owner by virtue of his purchase at the Marshall sale. That's uncontroverted. Page 196, we have PRM intervening in this suit. They're gone now. They didn't challenge the summary judgment. When they intervened, they claimed that they owned the rig. At 160, record 160, the PRC versus Intrepid. PRC filed its own claim against us and it was consolidated into this action. And in that action, PRC, on the record at page 160, pled Moreno was the owner of the rig. And then we have the PRC versus Diamond suit, which was before the same court, separate action. And on the record at 173 in this case, in the PRC versus Diamond suit, PRC pled that Mr. Moreno had title to the rig. And that's at paragraphs 4.8, 4.9, and 4.10 of PRC's complaint in that case. Another thing, the Ingram case instructs us that if it's a true joint venture and they're acting as a joint venture, there has to be mutual control and mutual management. But in this case, the summary judgment evidence indicates that Mr. Moreno was claiming they had no authority to do what they wanted to do, to move it over to Malin. So clearly he was maintaining his title to that rig at the same time as chastising his putative joint venture. And the agreement itself is very simple. And article 1.2 is titled... Let me move on. And I think... I wanted to end your thought and then I wanted to ask you a question. Going back to the issue of the 12B1 versus 56 or any other rule, the final judgment says dismiss for lack of standing. It doesn't grant a summary judgment. And so then it says dismiss with prejudice and so on and so forth. Is that, and I'm looking at record 2905, the June 22, 2016 judgment, is that actually the right way to say it? I mean, everybody's been talking summary judgment up until then. To me, it seems like it's a 12B1. Is that right or am I missing something? Your Honor, I haven't drilled down on it to that extent, but I have read the cases and to me, for instance, the National Rifle Association versus ATF case that you authored, Judge Prado, in that case, it was clear. You wrote that the plaintiff bears the burden of proof, just like any other element citing the Supreme Court's Lujan case, to prove standing. And in that case, you reviewed affidavits by the NRA showing that they had 11,000 members that were under the age of 21. That was, there was a law written, anyone under the age of 21 can't buy a weapon and the NRA challenged it and then the defendant challenged standing. I don't know about that case. And the court looked at that and found that was associational standing and then it also looked at affidavits and declarations of individual members and found they have standing. So the burden of proof is clearly on the plaintiff. What does that have to do with 12B1 versus B6 or 56? I haven't considered it from that aspect. Because actually under 12B1, the judge can look at facts and can resolve facts as necessary to decide subject matter jurisdiction, actually can resolve disputed facts as necessary to do that. How I look at it, I do a lot of maritime work. So this Court's test bank decision, we look at it in every case and we try and determine who actually owns proprietary interest in this case, because if they don't, they can prove actual damages, but you can't recover. You don't have standing in maritime tort. So I think that's the context that I looked at this. And the question, why isn't Mr. Moreno here, is a very good question. And I think Mr. Moreno was the smartest of the whole bunch. He's a wealthy individual. He lost money on this deal. And this has been a big quagmire of litigation, and he just didn't want to put good money after bad. But why didn't you sue him as owner of the rig? We arrested the rig. I'm sorry, Your Honor. We arrested the rig in rem. We sued the rig in rem. And then Plant Recovery Company filed a claim of owner under the supplemental amnesty rules. So he had his chance to come in. Yes. And that begs another question. Why isn't Plant Recovery Company here? Because they swore under oath that they owned the rig. So it was hard for us to find out who owned this rig. But Plant Recovery Company, summary judgment was granted against them, and they informed the court we don't challenge it. And Prospector Rig Management also informed, well, has chosen not to appeal. So the evidence in the record and the judicial admissions in the pleadings, to me, clearly indicate there was one owner, and it's Mr. Moreno. And the review of the joint venture agreement. And he was given notice when you arrested the rig? Yes. His counsel participated in this litigation. We had asked for his deposition. As a representative of Prospector Rig Management, he didn't want to give a deposition. But I think if we assume that there was a joint venture, The joint venture has to assume its own name. That's the Corinth case cited by the magistrate. A court cannot grant judgment in the name of a joint venture or partnership that has not appeared as a party. And they clearly never appeared as a party in this case. Thank you, Your Honor. Thank you. Mr. Kim, you have a few minutes for rebuttal. Mr. Moreno is not here because he assigned his claims and interest back in 2014 to PRC Environmental. If this is a 12B1 case, and I will concede I have not looked at it and drilled down at it and I wanted to research it on my iPad, but I know that's against the rules. But I think there's a waiver issue. And it's important because my whole fundamental belief, when you get right down to it, and I will concede I am a trial lawyer, true and true, I'm not an appellate guy. But this is form over substance in its overall basis. Because this case was discovered, experts were proffered, the proper damages on various levels were given that would have met, even if you had to go under the test mark test. I know you looked at Ms. Ramsey. She made the redressability argument. What's your response to that? That's not what Tex Mark and Robbins Dry Dock say. They say that you don't get consequential or economic damages if you don't own a proprietary interest. And our argument all along has been, by virtue of the joint venture and by virtue of owning a proprietary interest, with respect to that, you don't even get to the Robbins Dry Dock test or the test mark test, or as this court has written a ton of stuff on, NRA Deepwater Horizon. Because you just don't get that far. And I think the best analysis is found out of a district court opinion out of Beaumont, in which Judge Schell, looking at the exact same issue and joint ventures or partnerships on an interest in a dock, and he found that Star Enterprises, which owned 50, I mean SRI, which owned a 50% interest in a joint venture that owned the dock, that was enough of a proprietary interest and ownership of the dock where they would be entitled to consequential damages. Is that again? It is called Star Enterprises versus M.V. Salina, 1992, out of Beaumont. It's a district court opinion. I don't have the exact site here, but I will. I was wondering about the ocean in Plano, but you were saying he was sitting in Beaumont. Okay, fair enough. Yeah. So it's a district court opinion.  And so after two years, and the case is ready for trial, and then for the magistrate to turn this and flip this on a standing issue when the sole purpose of the standing issue is whether PRC has correct standing or not standing, and that's been never mentioned before in the entirety of the two years. No 12B1 motions, no Rule 17 motions, which would have required us an opportunity to amend, and the first time we get it, we immediately move to amend to clarify any misconceptions of it. And it's denied. But it's not just denied. It's denied some 11 months after it's already been, the report and recommendation has already been addressed to the district court level. So there is a year and a half gap at the magistrate level with respect to what happened procedurally with the motion to amend with respect to just, and we're not adding anything, we're not changing the case, we're not asking for time to rediscover the case, we're not asking for anything except to clarify the roles of the parties. And if you look at the verified complaint that was filed with respect to this, it's very clear in paragraph 4.3 to 4.5 that we are always saying that our interest is one that derives from the joint venture. And if you look at the case law, I think it's very clear with respect to that. Now, I think what's really important is that if you don't have this need to have Mr. Moreno here on a business level, there's absolutely no reason to. He's obviously a man of privacy. But what, and all that that implies. I'm not being naive with respect to that. He just didn't want to be found in this case. And he assigned his interest. I don't think so. Yeah. And, yes. But I'll tell you what's clear is from the original language, because they talked about that there was no mutual control and that's absolutely not true from the very language of the joint venture agreement. Because if you look at the very language of the agreement, any controls or ownership dispositions were merely remedial that the appellees want to talk to. So, for instance, if PRC absconded, then he had a remedial right back to ownership of the vessel. For instance, if they defaulted with respect, and look, when we got into a dockage dispute with Malin, they sued us. We owned up to it. When the barge sale went down and Mr. Marino didn't want to participate, we were there. We went through that whole process. It was PRC that was on the hook. But all the responsibilities and none of the benefits of it. That's what it sounds like. Yeah. We just want a shot at making it even. I mean, I'm still looking at it. Is Mr. Marino paying your fees? No. No. Fish, right? Be nice. Thank you. That concludes our oral argument docket for this morning. We'll be in recess until tomorrow.